IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHONG PHAM, | ) |
| | ) |
|     Petitioner, | ) |
| | ) |
| v. | )   No. CIV-25-1157-SLP |
| | ) |
| PAMELA BONDI, | ) |
| Attorney General, et al., | ) |
| | ) |
|     Respondents. | ) |

## REPORT AND RECOMMENDATION

Petitioner Chong Pham, seeks a writ of habeas corpus under 28 U.S.C. § 2241. Doc. 1.[1] Petitioner also requests a temporary restraining order and preliminary injunction "enjoining Respondents . . . [from] continuing to infringe on [his] constitutional rights," "an emergency preliminary order requiring Respondents to give [him] due process prior to removing him to an allegedly safe third country in the form of a full merits hearing for asylum, withholding of removal, and [Deferral of Removal under the Convention Against Torture (DCAT)] before an immigration judge . . . with a right to an administrative appeal to the Board of Immigration Appeals." Doc. 5, at 1-2.[2]

---

1    Citations to a court document are to its electronic case filing designation and pagination. Except for capitalization, quotations are verbatim unless otherwise indicated.

2    Petitioner also asks the Court "to order Respondents to provide 72-hour notice of any intended movement of [his person] pending the adjudication of

1

United States District Judge Scott L. Palk referred the matter to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C). Doc. 12. Respondent filed a Response, Doc. 16, to which Petitioner replied. Doc. 17. For the reasons set forth below, the undersigned recommends the Court grant habeas corpus relief and order Petitioner's immediate release.

I.    **Factual background.**

Petitioner is a citizen of Vietnam who was admitted to the United States in 1982. Doc. 16, at 2. After a 1998 conviction for endangerment of a child, in December 9, 2004, he was ordered removed from the United States. *Id.*; Doc. 1, at 1. Petitioner did not appeal his order of removal, and that order became final on January 8, 2005, or in the alternative, December 9, 2004, if he waived appeal. Doc. 1, at 1-2. Petitioner remained in detention for "an unknown period of time believed to be in excess of six months." *Id.* at 2. He was eventually released on an Order of Supervision on March 15, 2005 ("OOS"). Doc. 16, at 3. Petitioner complied with the OOS's requirements to appear for routine check-ins with Immigration and Customs Enforcement (ICE) and updated his address, as required, whenever he relocated. Doc. 1, at 2.

---

[his] habeas corpus petition." Doc. 5, at 2. Petitioner's request is moot as the Court ordered Respondents to provide 72-hour "advance notice of any scheduled removal or transfer of Petitioner" in its order directing Respondents to respond to the petition. Doc. 14.

Petitioner alleges that he was wrongfully detained while reporting to his regular check-in on August 19, 2025. *Id.* He further alleges that he was never served with a proper Notice of Revocation of Release ("Notice") providing an explanation of why his OOS was being revoked, nor was he afforded any opportunity to challenge any Notice. *Id.* at 12.

Petitioner contends that his detention is "designed to send a message to other individuals with final orders of removal that they need to leave the United States or they will be jailed indefinitely and without any process." *Id.* at 3. Petitioner alleges he cannot return to Vietnam because he does not have the requisite travel documents. *Id.* at 2. He states that he has applied for travel documents before, but his applications have consistently been denied. *Id.* And Vietnam, his alleged country of origin, has no record of his citizenship. *Id.* at 3.

Petitioner alleges that "to the best of [his] knowledge" no attempts at removal to a third country have been attempted since he was detained. *Id.* at 3. He has not been asked to apply for a travel document for any country since being detained. *Id.* at 2-3.[3] Petitioner contends that removal is unlikely to occur any time in the reasonably foreseeable future, and that Respondents have no

---

[3] Respondents state that Petitioner was provided with documents for completion for a Vietnam travel document on September 14, 2025. Doc. 16, Ex. 3, at 2.

3

intention of actually arranging his removal from the United States. *Id.* at 3. He maintains that his "aggregate period of civil immigration confinement exceeds six months and continues to grow." *Id.* at 7.

## II.     Petitioner's claims.

Petitioner alleges that "ICE has denied [him] release because: (A) it incorrectly believes [he] is responsible for reestablishing that removal is not substantially likely to occur in the reasonably foreseeable future, (B) ICE seeks to punish [him] for remaining in the United States after previously having been ordered removed, and (C) ICE seeks to punish [him] to send a message to similarly situated persons who have not yet been detained as a way to encourage those similarly situated people to immediately leave the United States to avoid [his] fate." *Id.* at 11.

In Count One, Petitioner requests "declaratory judgment pursuant to 28 U.S.C. § 2201 that [he] is detained pursuant to 8 U.S.C. § 1231(a)(1)," "that [he] has previously demonstrated to ICE's satisfaction that there is no significant likelihood of his removal in the reasonably foreseeable future ("NSLRRFF")," "that ICE did not rebut [his] prior NSLRRFF showing prior to redetaining him," and "that until ICE rebuts [his] prior NSLRRFF showing, [he] may not be redetained." *Id.* at 20.

In Count Two, Petitioner contends that his detention by Respondents violates the Immigration and Nationality Act and applicable ICE regulations.

4

*Id.* at 20-21.

In Count Three, Petitioner raises two due process claims. He states that his continued detention in excess of six months violates his "Fifth Amendment guarantee of due process" established in *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001) as Respondents have not rebutted his prior showing of no substantial likelihood of removal in the foreseeable future in 2004. *Id.* at 20. And he states a separate due process claim based on his allegations that he has been detained "to punish him and to otherwise send a message to similarly situated individuals that they must leave the United States to avoid a similar fate." *Id.* at 21-22.

In Count Four, Petitioner alleges that Respondents have violated the Administrative Procedures Act [APA] as "[their] decisions, which represent changes in the agencies' policies and positions, have considered factors that Congress did not intend to be considered, have entirely failed to consider important aspects of the case, and have offered explanations for their decisions that run counter to the evidence before the agencies." *Id.* at 22-23.

Petitioner also seeks a temporary restraining order and preliminary injunction preventing Respondents from removing or transferring him outside of the State of Oklahoma pending the disposition of his habeas petition. Doc. 5.

Respondents are sued in their official capacities. Doc. 1, at 7-9.

5

### III. Standard of review.

An application for a writ of habeas corpus "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas corpus relief is warranted only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

### IV. Analysis.

Petitioner argues that "ICE has no information that could reasonably lead it to believe changed circumstances exist that justify redetention under 8 C.F.R. § 241.13(i)(2)-(3)." Doc. 1, at 13. He further argues that Respondents have failed to comply with these provisions prior to detaining Petitioner after his release on an OOS and that no independent alternative basis supports Respondents' decision to renew his detention. *Id.* at 20-21.

#### A. Statutory and Regulatory Framework

Petitioner contends that his prolonged detention following his renewed detention after the final order for his removal violates 8 U.S.C. § 1231(a). *Id.* 1, at 16-17, 20. This statute dictates that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). "During the removal period, the Attorney General shall detain

6

the alien." *Id.* § 1231(a)(2). The removal period begins on the latest of the following dates:

> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

*Id.* § 1231(a)(1)(B).

The removal period may be extended "and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents . . . or conspires or acts to prevent the alien's removal." *Id.* § 1231(a)(1)(C).

Finally, detention of an alien subject to a final order of removal may not be indefinite and is presumptively reasonable for only six months beyond the removal period. *Zadvydas,* 533 U.S. at 701. After that, the detainee may bring a habeas action to challenge his detention. *Id.* at 684-85, 688. To obtain habeas relief, the petitioner has the initial burden to show "there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. Presuming the petitioner does so, the burden shifts, requiring "the Government [to] respond with evidence sufficient to rebut that showing." *Id.*

**B. ICE failed to abide by its regulations when it revoked Petitioner's OOS.**

In Count Two, Petitioner alleges that Respondents failed to comply with the Immigration and Nationality Act and ICE's applicable regulations "prior to redetaining [him] after [his] release on an OOS." Doc. 1, at 20.

The revocation of Petitioner's OOS is governed by 8 U.S.C. § 1231(a)(3) as Petitioner was released from ICE detention on March 15, 2005, Doc. 16, Ex. 3, at 2, following "an unknown period of time believed to be in excess of six months," Doc. 1, at 2. Petitioner alleges that "[t]he OOS [was] issued pursuant to 8 C.F.R. § 241.4(e) because it was determined there was no significant likelihood of removal in the reasonably foreseeable future," and "it was necessarily determined at that time that Pham did not present an ongoing danger or a flight risk." Doc. 1, at 2. So, the issue before the Court is whether Petitioner's OOS was properly revoked when he was retaken into ICE custody. And the undersigned determines that it was not.

Respondents do not specify why the OOS was originally issued, or rebut Petitioner's allegations that he was released in 2005 because there was no significant likelihood of his removal in the reasonably foreseeable future. *See* Doc. 16, Ex. 3 at 2. Petitioner alleges that he was detained past the 90-day removal period, and in excess of six months before being released pursuant to the OOS, Doc. 1, at 1-2. And Respondent states that when it detained Petitioner "[he] was informed that he would be detained because he was subject

8

to a final order of removal and there is *now* a likelihood of removal to Vietnam" pursuant to 8 C.F.R. Doc. 16, Ex. 3, at 2 (emphasis added). So, it is reasonable to infer that ICE must have made a determination that "there was no significant likelihood of removal in the reasonably foreseeable future" 8 C.F.R. § 241.13(a), (b)(1), before issuing the OOS in 2005.[4]

ICE may revoke an OOS and "return the alien to custody" when, "on account of changed circumstances . . . there [becomes] a significant likelihood [of] the alien['s] remov[a]l in the reasonably foreseeable future," or the alien violates the conditions of supervised release. 8 C.F.R. § 241.13(i)(1)-(2). Respondents do not allege that Petitioner violated any conditions of release, *see* Doc. 16, so it appears that Respondents rely on the "changed circumstances" prong as the justification for revocation.

"'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (per curiam) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). The Due Process Clause is also implicated where "an individual has reasonably relied on agency regulations promulgated for his guidance or benefit and has suffered substantially because of their violation by the agency."

---

[4] The parties have not presented the Court with a copy of Petitioner's 2005 OOS. However, Respondents state that Petitioner's OOS was revoked "in accordance with 8 C.F.R. § 241.13(i)(3)." Doc. 16, Ex. 3, at 2.

*United States v. Caceres*, 440 U.S. 741, 752–53 (1979).

As Petitioner notes, the attached declaration and Respondent's brief "fail[] to state whether [Petitioner] was given written notice." Doc. 17, at 2. Under § 241.13(i)(3), "*[u]pon revocation*, the alien will be notified of the reasons for revocation of his or her release," after which the alien will be afforded "an initial informal interview promptly after his or her return to [ICE] custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." *Id* (emphasis added).

There is no indication in the record that Petitioner received formal written notification of the reasons for his renewed detention when he was detained on August 18, 2025, or at any time thereafter. "[Petitioner] does not recall ever having been served with a [Notice] purporting to revoke his OOS," Doc. 1, at 12, and Respondents have not provided a written copy of said Notice to this Court.

Respondents may contend that verbally informing Petitioner of the reasons for revocation suffices for Notice under ICE regulations, but a review of other district court cases involving renewed detentions to effectuate removal shows that ICE typically will provide the detainee with written notice at some point during detention and provide it to the Court when responding to the detainee's habeas petition. *Zhu v. Genalo,* No. 1:25-cv-06523, 2025 WL 2452352, at * 8 (S.D.N.Y. Aug. 26, 2025) (citing cases); *see also Yee S. v. Bondi,*

10

No. 25-CV-02782 (JMB/DLM), 2025 WL 2879479, at *2 (D. Minn. Oct. 9, 2025) ("The next day, having already detained Petitioner, ICE served a [Notice] on him."); *see e.g., K.E.O. v. Woosley*, No. 4:25-CV-74-RGJ, 2025 WL 2553394, at (W.D. Ky. Sept. 4, 2025) (noting that the United States provided the district court a copy of the Petitioner's Notice to correct deficiencies identified by the Petitioner and recognizing that "[he was] entitled to a Notice . . . pursuant to authority delegated by regulation") (internal quotation marks omitted); *Umanzor-Chavez v. Noem*, SAG-25-01634, 2025 WL 2467640, at *2 (D. Md. Aug. 27, 2025) (noting that when Petitioner reported to ICE check-in his OOS "was revoked, and he was served with a notice that ICE intends to remove him to Mexico.") (internal quotation marks omitted).

This requirement of written notice is bolstered by another ICE regulation, § 214.4(d), which provides:

> A copy of **any decision** by the district director, Director of the Detention and Removal Field Office, or Executive Associate Commissioner to release or **to detain an alien shall be provided to the detained alien.**

8 C.F.R. § 241.4(d) (emphasis added).

Respondent has also failed to demonstrate to the Court that it made the required determination for revocation pursuant to § 241.13(i)(2). Section 241.13(i)(2) provides that ICE "may revoke an alien's release under [§ 241.13] and return the alien to custody if, on account of changed circumstances, . . . [it]

11

determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." Respondents' declaration states:

> On August 19, 2025, Enforcement and Removal Operations ("ERO") detained [Petitioner and] informed [him] that he would be detained because he was subject to a final order of removal and there is now a likelihood of removal to Vietnam.
>
> . . . .
>
> On September 14, 2025, [Petitioner] was provided with documents for completion for a Vietnam travel document.

Doc. 16, Ex. 3, at 2.

The declarant has not provided any details or evidence to the Court to support the apparent change in circumstances that made removal to Vietnam more likely. The declaration and Respondents' brief are wholly lacking in any details as to any communication with the Vietnamese government regarding Petitioner's removal status that would indicate that there is now a likelihood of Petitioner being removed. And there remains no record evidence that Petitioner has Vietnamese citizenship. *See* Doc. 17, at 2.

Respondents have failed to demonstrate that ICE determined there was a significant likelihood of Petitioner's removal in the reasonably foreseeable future before revoking Petitioner's OOS and detaining him. So, Respondents have failed to show that ICE abided by its regulations in making the decision to revoke Petitioner's OOS. *See Qui v. Carter,* 2025 WL 2770502, at *4-5 (D. Kan. Sept. 26, 2025) (holding that ICE violated its regulations when revoking

12

existing OOS as it did not "provide[] any details or statistics or evidence to support" a determination of changed circumstances).

Respondent argues:

> The mere fact Petitioner was not removed to Vietnam in 2004 or 2005 does not suggest that the government in incapable of executing his removal in 2025. Indeed, just one month ago, *Petitioner was provided with documents for completion for a Vietnam travel document*. Thus, Petitioner has failed to carry his initial burden of proof under Zadvydas. Moreover, the Federal Respondents have shown that there is a significant likelihood of removal in the reasonably foreseeable future. Accordingly, the Petition should be denied.

Doc. 16, at 10 (emphasis added).

The undersigned notes that this is largely cut and paste from similar responses Respondents have submitted in other cases[5], and Respondent makes no effort to differentiate Petitioner's immigration proceedings or Vietnam from other countries in which removals have been attempted.

As our sister court has noted:

> After the Vietnam War, many Vietnamese people "fled the country to escape political persecution." Until 2008, Vietnam refused to repatriate Vietnamese immigrants whom the United States had ordered removed. In 2008, the United States and Vietnam reached an agreement under which Vietnam agreed to consider repatriation requests for Vietnamese immigrants who had arrived in the United States after July 12, 1995. This meant that Vietnamese immigrants who had arrived before that date would not be considered for repatriation.

---

[5]   *See Momennia v. Bondi*, No. CIV-25-1067-J, Doc. 14 (W.D. Okla. Oct. 6, 2025); *see e.g., Hernandez-Perez v. ICE,* No. CIV-25-1081-J, Doc. 14 (W.D. Okla. Oct. 16, 2025).

13

Until 2017, ICE "maintained that the removal of pre-1995 Vietnamese immigrants was unlikely given Vietnam's consistent refusal to repatriate them." Thus, ICE typically detained pre-1995 Vietnamese immigrants for no more than ninety days after their removal orders became final. After that time expired, most detainees were released on orders of supervision.

In 2017, the United States and Vietnam began to renegotiate the 2008 agreement. Though the 2008 agreement was not formally amended, Vietnamese officials "verbally committed to begin considering ICE travel document requests for pre-1995 Vietnamese immigrants on a case-by-case basis, without explicitly committing to accept any of them."

In accordance with this change, ICE began detaining pre-1995 Vietnamese immigrants for longer than ninety days after their final orders of removal. ICE reasoned that Vietnam might issue the necessary travel documents for repatriation. ICE also began re-detaining some individuals who had been released on orders of supervision.

But this policy did not last long. In 2018, following additional meetings between United States and Vietnamese officials, "ICE conceded that, despite Vietnam's verbal commitment to consider travel document requests for pre-1995 immigrants, in general, the removal of these individuals was still not significantly likely." ICE accordingly instructed field offices to release pre-1995 Vietnamese immigrants within ninety days of a final order of removal.

In 2020 the policy changed again when the United States and Vietnam signed a Memorandum of Understanding ("MOU") to create a process for deporting pre-1995 Vietnamese immigrants. Under Section 4 of the MOU, Vietnam affirmed that it "intends to issue travel documents where needed, and otherwise to accept the removal of an individual subject to a final order of removal from the United States" if the individual meets four conditions. **First, the individual must have Vietnamese citizenship (and only Vietnamese citizenship)**. Second, the individual must have violated U.S. law, been ordered removed by a U.S. authority, and completed any sentence of imprisonment. Third, the individual

14

>  must have resided in Vietnam prior to arriving in the United States and have no right to reside in any other country or territory. . . . Petitioner asserts that from September 2021 to September 2023, the United States deported and repatriated only four pre-1995 immigrants to Vietnam. . . .

*Tran v. Scott*, No. 2:25-cv-01886-TMC-BAT, 2025 WL 2898638, at *2 (W.D. Wash. Oct. 12, 2025) (emphasis added) (internal citations omitted).[6] Petitioner is a pre-1995 Vietnamese immigrant, Doc. 16, at 2, and Respondent makes no mention of the MOU in its filings.

In the end, as a result of ICE's failure to provide Petitioner with the required notice before his renewed detention, and lack of apparent determination of changed circumstances necessitating revocation, the undersigned finds that ICE's revocation of his OOS was unlawful. *Qui,* 2025 WL 2770502, at 1-2. (finding that failure to properly revoke the petitioner's OOS "pursuant to the applicable regulations" rendered revocation ineffective). So, Petitioner is entitled to his immediate release subject to the same OOS that governed his earlier release.[7]

---

[6] *United States v. Pursley*, 577 F.3d 1204, 1214 n.6 (10th Cir. 2009) (noting court's "discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters bearing directly upon the disposition of the case at hand") (internal quotation marks omitted).

[7] The undersigned does not address Petitioner's remaining arguments as to how the revocation of his release is otherwise unlawful under the APA or under *Zadvydas*. The undersigned also declines to address Petitioner's request for declaratory judgment as to the legality and nature of his detention under ICE regulations and whether ICE's actions were arbitrary and capricious as

## V.     Recommendation and notice of right to object.

For the reasons set forth above, the undersigned recommends the Court grant Petitioner's request for habeas relief, and order his immediate release from custody subject to the terms of his unlawfully revoked OOS. The undersigned further recommends that the Court order Respondents submit a declaration pursuant to 28 U.S.C. § 1746 affirming that Petitioner has been released from custody.[8]

The undersigned advises the parties of their rights to file an objection to this report and recommendation with the Clerk of this Court on or before November 6, 2025, in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2).[9] The undersigned further advises Petitioner that

---

his immediate release, if this Report and Recommendation is adopted, will moot these requests.

[8]     Adoption of this Report and Recommendation will render Petitioner's pending emergency motion for temporary restraining order and preliminary injunction, Doc. 5, moot.

[9]     Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation to seven days. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) (noting that "[t]he Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process").

failure to make a timely objection to this report and recommendation waives the right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This report and recommendation disposes of all issues and terminates the referral to the undersigned Magistrate Judge in this matter.

ENTERED this 30th day of October, 2025.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE